IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR VESS GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-1830-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Oscar Vess Gonzales ("Plaintiff" or "Mr. Gonzales") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is REVERSED and REMANDED.

**Background**

Plaintiff alleges that he is disabled as a result of a gunshot wound he sustained on April 9, 2011. After his application for disability insurance benefits and supplemental security income ("SSI") were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on January 7, 2015. At the time of the hearing, Plaintiff was 48 years old. He has a 9th grade education and past work experience as a glazier. Plaintiff has not engaged in substantial gainful activity since March 26, 2013.

1

The ALJ found that Plaintiff was not disabled and therefore not entitled to supplemental social security income and disability insurance benefits. The medical evidence established that Plaintiff suffered from a fracture of his right lower extremity and from acute anxiety disorder. But the ALJ concluded that only the claimant's fracture of his right lower extremity was severe and that it did not meet or medically equaled the severity of one of the listed impairments in 20 CFR Part 404. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work but could not return to his past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as an eyeglass packager (DOT #713.684-038), semiconductor loader (DOT# 726.687-030), or film inspector (DOT# 726.684-050) – jobs that exist in significant numbers in the national economy. Given his age, education, and exertional capacity for sedentary work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff argues that the ALJ erred by (1) not ordering a consultative examination of Plaintiff's physical impairments, (2) relying on a vocational expert ("VE") who only spoke to the jobs the claimant could perform if he needed to use a cane even though the use of a cane was not reflected in his RFC, (3) failing to apply the correct standard in determining the severity of Plaintiff's conditions, and (4) determining Plaintiff's RFC without ordering a consultative exam of his physical impairments.

For the reasons and to the extent explained below, the hearing decision is reversed and remanded.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Mr. Gonzales appears to argue that the ALJ erred for four reasons. He specifically contends that the ALJ erred by (1) assigning various state agency medical consultant opinions limited weight, (2) relying on a vocational expert who only spoke to the jobs the claimant could perform if he needed to use a cane even though the ALJ did not find that he needed to use one, (3) applying an improper standard to determine whether Mr. Gonzales' mental impairments are "severe," and (4) determining Mr. Gonzales' RFC without first calling for a consultative exam to determine Mr. Gonzales' physical impairments.

The Court discusses each of these arguments in further detail below.

I. The ALJ's decision to assign the state agency consultant reports limited weight is not a ground for reversal.

In his decision, the ALJ explains that he "accord[s] little weight to the state agency consultants' findings regarding the claimant's physical limitations. (Exhibits B1A, B7A)." Administrative Record [Dkt. No. 10 ("Tr.")] at 19. Mr. Gonzales argues that the ALJ erred by so doing. He appears to note that there are no other medical opinions that speak to Mr. Gonzales' RFC and that, "by not relying on … medical expert evidence, the ALJ 'succumbed to the temptation to play doctor.'" *See* Dkt. No. 15 at 8 (quoting *Schmidt v. Sullivan*, 914 F.2d 117-18 (7th Cir. 1990)).

But any such error is harmless. The ALJ found that "the claimant is somewhat more functionally limited than was previously determined" by the state agency medical consultants, not less. Tr. at 19. In particular, the state agency consultant reports concluded that Mr. Gonzales could stand and/or walk for 4 hours in an 8-hour work day. *See id.* at 53, 62, 74, & 85 (each report reaching this conclusion). And the ALJ concluded that Mr. Gonzales could only stand and/or walk for 2 hours in an 8-hour work day. *Id.* at 17-18.

A person who can stand and/or walk for at least 4 hours during an 8-hour work day can necessarily also stand and/or walk for at least 2 hours in the same period. As a result, Mr. Gonzales is able to perform any jobs that the ALJ properly identified at Step 5 regardless of whether the ALJ erred by assigning the state agency medical consultant reports "limited weight."

II. <u>The ALJ's decision to rely on the VE's testimony is not a ground for reversal.</u>

Mr. Gonzales also argues that the Commissioner failed to meet her burden at Step 5 of the analysis to identify jobs that he could perform that exist in significant numbers in the national economy. He notes that, in finding that the Commissioner met this burden, the ALJ relies on testimony from a vocational expert who only identifies jobs that Mr. Gonzales could perform if he "requires the use of a cane when walking." Dkt. No. 15 at 8. But he does not use a cane to walk, as evident in the ALJ's RFC, which contains no such limitation. Mr. Gonzales concludes that, as a result, "[t]he Court cannot know if the VE would have testified that sedentary work is available in

7

this case, had the ALJ excluded the use of a cane from the hypothetical question." *Id.* at 8-9.

Here too, the Court disagrees. The VE found that there are jobs that Mr. Gonzales can perform – even if Mr. Gonzales were so impaired that he would "require[] the use of a cane when walking." The fact that the ALJ found that Mr. Gonzales does not use a cane – that is, that he is not so impaired that he would "require[] the use of a cane when walking" – means that he can perform jobs that someone who needs a cane can perform <u>and</u> any additional jobs that someone who does not need a cane can perform. The Court therefore cannot find, on this basis, that the Commissioner failed to meet her burden at Step 5.

III. <u>The ALJ's failure to find the combination of Mr. Gonzales' impairments to be severe and to consider their combined effect requires reversal.</u>

Mr. Gonzales contends that the ALJ applied the wrong legal standard to determine whether his impairments are severe.

In *Stone v. Heckler*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment or combination of impairments is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set

8

forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). The ALJ is also "required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of 'magic words' and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

Mr. Gonzales concedes that the ALJ cited to *Stone* in his decision. But he disputes that he actually applied that standard correctly.

The Court agrees that the ALJ applied the wrong legal standard when determining the severity of Mr. Gonzales' impairments.

The ALJ found Mr. Gonzales' physical limitations to be severe and his mental limitations to be non-severe. He necessarily erred by so doing. When making a severity determination, the ALJ "is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza*, 219 F.3d at 393. Because the ALJ found that Mr. Gonzales' physical impairments to be severe, he surely would have also found Mr. Gonzales combination of physical and mental impairments to be severe had he applied the proper severity standard.

The Court would find that the ALJ erred even if Mr. Gonzales' mental impairments were the only ones that he suffered.

The ALJ found "[t]he claimant's medically determinable mental impairment of anxiety" to be nonsevere because it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id.*

But, as another judge in this District has explained, "[t]he 'minimal effect on an individual's ability to work' definition that the ALJ [apparently applied] in this case is not the standard set forth in *Stone*. In the Fifth Circuit, the appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*." *Ruby v. Astrue*, No. 3:08-cv-1012-B (BF), 2009 WL 4858060, at *7 (N.D. Tex. Dec. 14,

2009) (citing *Stone*, 752 F.2d at 1101; *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). A condition is consequently "severe" if it is "expected to interfere with the individual's ability to work" at all. *Stone*, 752 F.2d at 1101. "Unlike the standard that the ALJ applied, *Stone* provides no allowance for minimal interference on a claimant's ability to work." *Ruby*, 2009 WL 4758060 at *8.

In the past, the ALJ's failure to properly apply the severity standard would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806-07 (N.D. Tex. Jan. 27, 2009); *Sanders v. Astrue*, 2008 WL 4211146, at *8 (N.D. Tex. March 21, 2014). More recently, however, courts have not automatically remanded such cases. *See, e.g.*, *Lacy v. Colvin*, No. 3:13-cv-1312-BN, 2013 WL 6476381, at *8 (N.D. Tex. Dec. 10, 2013); *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013).

Rather, where the Court has already found that the ALJ failed to properly apply the severity standard, the presumption that legal error occurred may be rebutted by showing that the error was harmless. *See Middleton v. Colvin*, No. 3:13-cv-2647-BN, 2014 WL 1158894, at *4 (N.D. Tex. March 21, 2014) (citing cases) ("[T]he presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless.").

"Many courts have presumed that [such an error] is harmless where the analysis continues beyond Step 2." *Id.* (citing *Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011)).

But it is not harmless – even if the analysis continues beyond Step 2 – where the ALJ applies an incorrect severity standard, then "explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to the other claimed impairments." *Jones*, 821 F. Supp. 2d at 850.

Mr. Gonzales argues that the ALJ's error is material because the ALJ improperly found his mental impairments to be non-severe and then failed to consider those impairments later in the sequential analysis. *See* Dkt. No. 15 at 7.

The Court agrees. When determining Mr. Gonzales' RFC, the ALJ does not discuss any mental limitations that Mr. Gonzales might face due to his diagnosed acute anxiety disorder. This constitutes legal error. "The law of this Circuit requires consideration of the combined effect of impairments" in every stage of the sequential analysis. *Loza*, 219 F.3d at 394-99 (finding that "[t]he ALJ erred by separately evaluating the consequences of [the claimant's] mental and physical impairments and not considering their combined effects" after improperly determining that the claimant's mental impairment was non-severe) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987)). As such, the ALJ is required to consider "'the degree of

impairment caused by the *combination* of physical and mental problems'" that Mr. Gonzales faces. *See id.* at 399 (quoting *Strickland*, 615 F.2d at 1110)).

The ALJ appears to make some references to Mr. Gonzales' mental health records in his RFC determination. He specifically "note[s] that [Mr. Gonzales] has not received ongoing mental health treatment for any mental health condition" and purports to "accord great weight to the state agency consultant's opinion regarding the claimant's mental limitations," an opinion which he finds to be consistent with a consultative exam on Mr. Gonzales' mental limitations. Dkt. No. 11-3 at 19-20.

These comments could suggest that the ALJ considered Mr. Gonzales' mental health conditions in his RFC determination and simply found that they caused no mental limitations whatsoever.

But the Court cannot make this inference. The ALJ has a responsibility "to adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so must address all pertinent evidence." *Calzada v. Astrue*, 753 F. Supp. 250, 269 (S.D.N.Y. 2010) (dropping cases). The Court's inability to clearly determine whether the ALJ adequately considered certain limitations or not constitutes reversible error. *See Kneeland v. Berryhill*, 850 F.3d 749, 762 (5th Cir. 2017) (finding an ALJ materially erred by failing to address an examining physician's medical opinion because while "it is possible that the ALJ considered and rejected [that] opinion, ... without any explanation, we have no way of knowing"); *Audler*, 501 F.3d at 448 (remanding where, due to the ALJ's failure to adequately explain why the

claimant was not disabled, '"we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.' *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Further, the ALJ acknowledges that Mr. Gonzales likely experienced a number of "mild" limitations in his "ability to perform basic work activities" – none of which are discussed in his RFC determination. Dkt. No. 11-3 at 16-17 (finding that "[t]he claimant's medically determinable mental impairments of anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities," given the "mild" limitations in "daily living," "social functioning," and "concentration, persistence or pace" that Mr. Gonzales experiences). The state agency consultant report the ALJ references – which he purports to "accord great weight" for its consistency with a consultative exam in the record – does not find that the ALJ faces no limitations due to his acute anxiety disorder either. It, instead, concludes that his mental condition may lead to at least some limitations. *See* Tr. at 83.

The Commissioner contends that the ALJ did not have to include mental limitations in his RFC determination that do not arise to the level of a severe impairment. *See* Dkt. No. 18 at 5.

The Court disagrees. The Fifth Circuit has explained that, "'throughout the disability determination process,'" the ALJ is required to consider the combined effect of any impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza*, 219 F.3d at 393 (quoting 20 C.F.R. § 404.1523).

14

The ALJ's RFC determination would have been different had he considered the limitations that Mr. Gonzales faces due to his acute stress disorder. This, in turn, could "have affected the jobs available at step five of the sequential evaluation process, and [Mr. Gonzales] may have been found disabled." *Kneeland*, 850 F.3d at 761-62.

For these reasons, "the interaction or cumulation of all of Mr. [Gonzales'] mental and physical medical problems and impairments" must be considered in the ALJ's RFC determination on remand. *Loza*, 219 F.3d at 399.

IV. The ALJ's failure to order a consultative examination as to how Mr. Gonzales' physical conditions impacted his ability to work also requires reversal.

Mr. Gonzales argues that he has a long-standing diagnosis of chronic bilateral pain and, as a result, the ALJ had a duty to order a consultative examination to determine the extent of Mr. Gonzales' physical impairments. The Court agrees.

The Fifth Circuit has explained that "[t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. This usually includes "request[ing] a medical source statement describing the types of work that the applicant is still capable of performing" despite his or her ailments. *Ripley*, 67 F.3d at 557; *see also* SSR 96-5P (defining "medical source statements" as "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities.").

But "[t]he absence of such a statement ... does not, in itself, make the record incomplete. In a situation such as the present one, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

An ALJ's determination is supported by substantial evidence when the claimant has failed "to present evidence to raise a suspicion concerning a non-exertional impairment." *Brock*, 84 F.3d at 728 (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). A few stray references to impairments, for which a claimant "never sought medical treatment" are not sufficient "to raise a suspicion of non-exertional impairment." *Id.* But a medical record establishing that the claimant suffered from and received treatment for a medical condition is sufficient. *See Ripley*, 67 F.3d at 552; *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. March 31, 2016) (finding that the ALJ should have ordered a consultative exam where state agency medical consultants determined that the claimant's affective disorders caused "mild restrictions in activities of daily living, mild difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation").

The medical record raises at least a suspicion that Mr. Gonzales faces physical limitations that could impact his ability to work here. The evidence establishes that Mr. Gonzales was "shot through the lower extremity with a large caliber handgun, causing substantial damage to his leg and foot," that he has received treatment for a mental and physical conditions, even if this treatment was not consistent, and that he

16

has experienced pain ongoing pain as a result. Tr. at 13-15. The evidence also establishes – and the ALJ appears to agree – that Mr. Gonzales' condition has at least some effect on Mr. Gonzales' ability to work. *See* Tr. at 17-19 (the ALJ's discussion of the state agency medical consultants' conclusions and his own conclusions regarding Mr. Gonzales' physical limitations).

"What the record does not clearly establish is the [precise] effect [Mr. Gonzales'] condition had on his ability to work." *Ripley*, 67 F.3d at 557.

The ALJ determined Mr. Gonzales' RFC based on his own review of the medical records, medical consultant agency reports that he assigned "limited weight," and Mr. Gonzales' inconsistent treatment history, ability to ambulate without assistive devices, and ability to perform certain chores.

These rationales, on their own, do not provide substantial evidence for the ALJ's determination as to "the effect [Mr. Gonzales'] condition[s] had on his ability to work." *Id.* at 557-58 (finding that the ALJ's interpretation of the medical records only established the claimant's problems with his back and not his ability to work).

The Fifth Circuit has explained that, as a non-medical professional, the ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). The Court of Appeals reasons that "'[c]ommon sense can mislead'" and "'lay intuitions about medical phenomena are often wrong.'" *Id.* (quoting *Schmidt*, 914 F.2d at 118).

Courts have therefore consistently found that an ALJ's RFC determination is not supported by substantial evidence where the ALJ has failed to either elicit or take into account the opinion of a treating or examining physician. *See Ripley*, 67 F.3d at 557-58; *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. Dec. 10, 2009) ("[T]he ALJ impermissibly relied on his own medical opinions as to the limitations presented by 'mild to moderate stenosis' and 'posterior spurring' to develop his factual findings."); *Butler v. Barnart*, 99 F. App'x 559, 560 (5th Cir. June 2, 2004) ("There was no medical opinion or evidence submitted reflecting that, after Butler had two and one-half toes amputated from his left foot, he could perform work requiring standing or walking for six-hour periods during an eight-hour work day. Thus, there was not substantial medical evidence in the record to support the ALJ's determination."); *Tyler v. Colvin*, No. 3:15-cv-3917-D, 2016 WL 7386207, at *5 (N.D. Tex. Dec. 20, 2016) ("[T]he ALJ impermissibly relied on his own medical opinion to develop his RFC determination.").

And, while there does appear to be some evidence as to Mr. Gonzales' ability to work from state agency medical consultants, the ALJ assigned these reports "limited weight." Further, these physicians did not treat or examine Mr. Gonzales. The ALJ consequently could not rely upon this evidence to determine how Mr. Gonzales' conditions impacted his ability to work – even if he had wanted to do so. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) (explaining that the ALJ's decision is not substantially supported where "the reports of non-examining physicians constitute the sole medical evidence presented" or "when a non-examining physician makes specific medical conclusions that either contradict or are unsupported by

findings made by an examining physician"); *Fitzpatrick*, 2016 WL 1258477, at *8 (finding that the ALJ "improperly made an independent RFC finding" as to "the effects of [the claimant's] mental impairments on his ability to work" where "other than the opinions of the two [state agency medical consultants]," there was no evidence in the record as to the claimant's ability to work despite his impairments).

For these reasons, the ALJ erred by failing to request a consultative exam from a treating or examining physician before determining Mr. Gonzales' RFC.

## Conclusion

The hearing decision is REVERSED and this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: August 15, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE